IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-06-080 |
| | § | |
| GREG SINGLETON | § | |

**MEMORANDUM AND ORDER**

This criminal case is before the Court on Defendant Greg Singleton's Motion to Dismiss Count Ten of the Second Superseding Indictment ("Motion") [Doc. # 12], to which the Government has responded in opposition [Doc. # 38]. At this stage of the proceeding, Singleton's pretrial Motion is **denied**. The denial is not intended as a ruling – or even a comment – on any motions Singleton makes at later stages of the case based on the Government's evidence at trial.

**I.   BACKGROUND**

Singleton was indicted in 2004 with Michelle Valencia in Criminal Case No. H-04-514. They were charged with jointly participating in a conspiracy to violate the Commodity Exchange Act, 7 U.S.C. § 13(a)(2) (the "CEA"), and six substantive counts of "false reporting" under the CEA, § 13(a)(2). The charges arose from Defendants' joint and separate submissions of reports to publications that compile

natural gas trading data and create a natural gas "index price" for numerous locations around the United States. On July 27, 2005, a Superseding Indictment was issued charging the two Defendants with conspiracy, as well as sixteen substantive counts.[1]

On March 8, 2006, the grand jury issued a Second Superseding Indictment in Criminal Case No. 04-514 against Valencia. The grand jury also returned a separate indictment (the "Indictment") charging Singleton with one count of conspiracy (involving the same conspiracy charged against Valencia), five counts of false reporting under the CEA, three counts of wire fraud, and one count of obstruction of justice in violation of 18 U.S.C. § 1512(c)(2). Because the grand jury separated the charges against Defendants into two indictments, the Court opened this new case for Singleton's indictment.

Singleton moves to dismiss Count Ten of the Indictment on the grounds that it does not allege an offense recognized by law. More specifically, Singleton contends that Count Ten is legally deficient because it does not allege that he tampered with existing physical evidence, does not allege an adequate nexus with an official proceeding, and is unconstitutionally vague as applied to him in this case. The Government responds that the statute contains very broad language which, when

---

[1] Eight of the counts are for making false reports in violation of the CEA and eight are wire fraud counts. Some of the substantive counts name only one of the two Defendants and some name both Defendants.

interpreted literally, covers all types of obstructive conduct including that alleged against Singleton. The Motion to Dismiss is ripe for decision.

## II. MOTION TO DISMISS COUNT TEN

### A. Standard for Pretrial Motion to Dismiss

Singleton moves to dismiss Count Ten of the Indictment before trial. The Federal Rules of Criminal Procedure provide that the indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). A challenged indictment should not be dismissed if it tracks the language of the statute, alleging all elements of the offense. *See, e.g., United States v. Nevers*, 7 F.3d 59, 63 (5th Cir. 1993). When considering a pretrial motion to dismiss an indictment, the Court must accept the allegations in the indictment as true. *See United States v. Mann*, 517 F.2d 259, 266 (5th Cir. 1975).

A pretrial motion to dismiss an indictment is not a proper vehicle to challenge the adequacy of the Government's evidence. *See id.* at 267. "[A]n indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits." *Id.* (citing *Costello v. United States*, 350 U.S. 359, 363 (1956)).

### B.     18 U.S.C. § 1512(c)(2) and Count Ten

Section 1512(c)(2) of Title 18, which was added to the United States Code as part of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"), provides:

> (c)    Whoever corruptly—
>
> (1)   alters, destroys, mutilates, or conceals a record, document or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> **(2)   *otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so*,** shall be fined under this title or imprisoned for not more than 20 years, or both.

18 U.S.C. § 1512(c) (emphasis added). The statute defines "official proceeding" for purposes of § 1512(c)(2) to include a "proceeding before a Federal Government agency which is authorized by law." 18 U.S.C. § 1515(a)(1)(C).

Count Ten includes various factual allegations, which will be described in more detail in later sections, and then charges that Singleton violated 18 U.S.C. § 1512(c)(2) as follows:

> On or about November 22, 2002, in the Houston Division of the Southern District of Texas, the defendant GREG SINGLETON, did knowingly, intentionally and corruptly obstruct, influence and impede official proceedings, to wit, the government investigations of El Paso's natural gas price reporting to trade publications.

Indictment, at 21, ¶ 15. The Government subsequently filed a document entitled "Obstruction Evidence" ("Bill of Particulars") [Case No. 04-514, Doc. # 124], which

outlined specific ways the Government contends that Singleton obstructed the federal government agency investigations of El Paso's natural gas price reporting to trade publications.[2]

### C.     Existing Document Requirement

Singleton argues that Count Ten should be dismissed because 18 U.S.C. § 1512(c)(2) prohibits only efforts to tamper with physical evidence and the Indictment does not charge Singleton with that conduct.  The Government responds both that § 1512(c)(2) does not require tampering with existing physical evidence and that the Indictment alleges a nexus with physical records.

Singleton makes both statutory construction and legislative history arguments to support his position that § 1512(c)(2) should not be interpreted to prohibit the conduct in which he is alleged to have engaged in Count Ten because he did not tamper with physical evidence.  Singleton also urges the Court to apply the rule of lenity.  The Government counters that the broad statutory language of § 1512(c)(2) easily encompasses Singleton's conduct as alleged in the Indictment and the Bill of Particulars.

---

[2]     It is unclear why this document was not filed in the case against Singleton, Crim. Case No. H-06-080.

**1.     Statutory Construction**

The parties agree that "[t]he starting point in every case involving construction of a statute is the language itself." *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985) (citation omitted); *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 173-75 (1994).

Singleton argues that the statute prohibits only efforts to tamper with existing physical evidence and that a more expansive reading of § 1512(c)(2), which he refers to as the "residual clause," would make the balance of § 1512 surplusage.[3] Singleton argues that the residual clause must be tied to § 1512(c)'s focus on efforts to undermine the integrity or availability of existing physical evidence.[4] The narrow interpretation

---

[3]  Section 1512 as amended in 2002 has eleven major subsections which include numerous proscriptions against killing, using physical force, intimidating, threatening, or harassing others to influence, delay or prevent their testimony in an official proceeding. *See* 18 U.S.C. § 1512(a)-(k).

[4]  Singleton also argues that certain obscure canons of statutory construction support his position. Specifically, Singleton in his Motion discusses *ejusdem generis*. This canon of statutory construction provides that when the meaning of a statute is uncertain, general statutory terms which follow specific ones are limited to matters similar to those specified. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-15 (2001). Singleton also urges the Court to apply *noscitur a sociis*. This canon provides that courts should not ascribe "to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving 'unintended breadth to the Acts of Congress.'" *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961)). The Court's interpretation of § 1512(c)(2) is based on the language and context of the statute and does not violate any other applicable canon of statutory construction.

of § 1512(c)(2) urged by Singleton, however, is too limited because it would cause subsection (c)(2) to cover no more than the conduct that subsection (c)(1) covers.

The Government favors a literal reading of the very expansive language of § 1512(c): "[w]hoever corruptly— . . . otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined . . . or imprisoned . . .." The Government's argument, however, totally disregards the clause's context within § 1512, specifically § 1512(c).

Having found Singleton's proposed interpretation too limited and the Government's proposed interpretation too broad, the Court begins its analysis with the language of § 1512(c)(2) itself. The provision prohibits a person from "corruptly . . . otherwise obstruct[ing], influenc[ing] or imped[ing], or any official [Federal Government] proceeding, or attempt[ing[ to do so." Section 1512(c)(2) is the "catch all" that follows the prohibition in § 1512(c)(1) that a person may not "corruptly" alter, destroy, or conceal records, documents or tangible objects with the intent to impair the object's integrity or its availability for use in an official proceeding. The language of subsection (c)(1) implies that the record, document, or other object is in existence when the defendant acts to alter, destroy, or conceal it. The residual language in subsection (c)(2) must, therefore, capture conduct similar to but different from that specifically described in (c)(1). *See United States v. Howard*, 569 F.2d 1331, 1333 (5th Cir. 1978)

(applying same principle to 18 U.S.C. § 1503). Therefore, the Court concludes that there is no requirement in § 1512(c)(2) that the tangible evidence at issue be in existence prior to the prohibited conduct.[5]

The Court holds also, however, that to violate § 1512(c)(2), the charged conduct must have some reasonable nexus to a record, document or tangible object. In *United States v. Howard*, 569 F.2d 1331, 1333-36 (5th Cir. 1978), the Fifth Circuit interpreted another obstruction of justice statute, 18 U.S.C. § 1503. Much like § 1512(c), § 1503 contains two sections, one more specific than the other. Section 1503 first prohibits persons from using threats, force or threatening communications to influence, intimidate or injure a federal juror or court officer on account of his being or having been a juror or officer. Section 1503 then concludes more generally that it is a criminal offense to use threats or force or threatening communications to influence, obstruct, or impede the due administration of justice. The *Howard* court held that "the most natural construction of the second clause is that it prohibits acts that are similar in result, rather than manner, to the conduct described in the first part of the statute." *Id.* at 1333

---

[5] The Court's conclusion in this regard is consistent with the interpretation of § 1512(c)(2) by other district courts. *See, e.g., United States v. Reich*, 420 F. Supp. 2d 75, 84 (E.D.N.Y. 2006) (defendant violated § 1512(c)(2) when he created a forged order and sent it to a law firm); *United States v. Gladiola Ramirez*, 2006 WL 573971 (D.P.R. Mar. 8, 2006) (defendant violated § 1512(c)(2) when he "drafted a phony services contract to hide the true nature of illegal kickback payments"); *United States v. Hutcherson*, 2006 WL 270019 (W.D. Va. Feb. 3, 2006) (indictment adequately alleged violation of § 1512(c)(2) where it alleged defendant prepared a phony document).

(footnote omitted). The Fifth Circuit thus interpreted the residual language of § 1503 to cover "conduct that is related to a pending judicial proceeding . . . and then only if the offending action was prompted, at least in part, by a 'corrupt' motive." *Id.* at 1337 n. 9 (citation omitted). By analogy, the Court construes the residual clause of § 1512(c) to require some nexus to tangible evidence, though not necessarily tangible evidence already in existence.

### 2.  Legislative History

Singleton and the Government each cite snippets of Sarbanes-Oxley's legislative history to support their respective positions. Legislative history can be "an additional tool of analysis," but "only the most extraordinary showing of contrary intentions from those data would justify a limitation on the 'plain meaning' of the statutory language." *Garcia v United States*, 469 U.S. 70, 75 (1984).

Although the proper reach of § 1512(c)(2) can be determined from the language and context of the statute itself, the Court has reviewed the legislative history cited by both parties. The cited legislative history does not directly address the pending issue. Instead, the cited record establishes merely that Sarbanes-Oxley criminalizes many forms of obstruction of justice, including tampering with corporate records. The legislative history does not delineate in any detail or limit what other forms of

obstruction Congress intended to address. Thus, the outer reach of § 1512(c)(2) is not established by the legislative history.

Therefore, even if § 1512(c)(2) were ambiguous and required consideration of the legislative history, the cited legislative history contains nothing that defeats the Court's conclusion that the statute proscribes a witness's intentional lies to individuals that the witness expects will report his statements to the government in connection with an official proceeding. Just as document shredding and witness tampering impair officials' ability to gather facts during an investigation or administrative proceeding, a witness's intentional provision of false information to be included in a written report for a government investigation interferes with the Government's search for truth.

### 3.     Rule of Lenity

Singleton argues that the Government's interpretation of § 1512(c)(2) violates the rule of lenity, which provides that "[w]hen there are two rational readings of a criminal statute, one harsher than the other, [a court is] to choose the harsher only when Congress has spoken in clear and definite language." *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003) (quoting *McNally v. United States*, 483 U.S. 350, 359-60 (1987)). The rule of lenity, however, applies only as a last resort in cases where the statute remains ambiguous after all other statutory analysis is concluded. *See Smith v. United States*, 508 U.S. 223, 239-40 (1993). As discussed above, analysis of

the language and context of § 1512(c)(2) provides a basis for construing the statute and the rule of lenity, therefore, is inapplicable.

### 4.      The Indictment

Having construed § 1512(c)(2) to require some nexus with a tangible item, the Court considers whether the allegations in the Indictment satisfy that requirement. The Indictment alleges that on or about October 21, 2002, El Paso's legal department sent a questionnaire to Defendant Singleton that "stated: 'As you know, El Paso has received a subpoena from the Commodity Futures Trading Commission ("CFTC") with regard to price reporting to energy industry trade publications. In preparation for responding to this subpoena, we need the following information from anyone who preformed [*sic*] any trading function for any commodity or have [*sic*] had any communications with any energy industry trade publications since January 1, 2000.'" Indictment, at 18, ¶ 6. Singleton is alleged to have provided a written response to the questionnaire. *Id.* at 18, ¶ 7. The Indictment also alleges that the Federal Energy Regulatory Commission ("FERC") issued a data request to El Paso for information about price reporting to trade publications. *Id.* at 18, ¶ 8. Count Ten further alleges that Singleton was told that El Paso had hired outside lawyers to investigate the accuracy of information that the company had reported to trade publications; that the outside lawyers told Singleton that El Paso may choose to disclose any information he

gave to them to "other third parties, including government agencies;" that the outside lawyers sought to interview Singleton but he informed them that he had retained an attorney and wanted to reschedule the interview for a time when his own attorney could be present; and that Singleton's attorney was a criminal defense attorney. *Id.* at 19-20, ¶ 12.  The Indictment alleges that El Paso lawyers informed the United States Attorney's Office ("USAO") that the company had uncovered an incident in which an El Paso natural gas trader had reported inaccurate information to a trade publication, that El Paso gave the USAO copies of the company's responses to inquiries by the FERC, and that the USAO immediately began a criminal investigation into the matter. *Id.* at 20, ¶ 13.  The Indictment next alleges that El Paso's outside lawyers met with Singleton, with his criminal defense lawyer present, "to interview him regarding the practices that were the subject of the CFTC and FERC investigations;" that during the interview Singleton did not "disclose, falsely denied, and otherwise concealed that he had provided false information to trade publications;" that Singleton "believed that El Paso's Outside Lawyers would inform government agencies of his statements during the interview;" and that "[i]n fact, El Paso provided a memorandum of [their] interview [with Singleton] to the CFTC, the FERC, and the USAO." *Id.* at 20, ¶ 14.

The Indictment alleges in effect that Singleton provided false information that El Paso's outside lawyers used to create a written report that they submitted to the CFTC,

the FERC, and the USAO. These allegations satisfy the requirement for some nexus to a document or other tangible evidence. In substance, the Indictment charges that Singleton knowingly and corruptly participated in the creation of a memorandum – a document or tangible object – that he expected would obstruct, influence or impede the CFTC's, FERC's and/or USAO's investigations. This conduct alleged in Count Ten fits within the scope of § 1512(c)(2) as construed by the Court. The Court makes no comment regarding whether the Government will be able to prove these allegations at trial; for pretrial purposes, these allegations of Singleton's conduct are sufficient to fit within subsection (c)(2). Defendant's motion to dismiss Count Ten because it does not allege that Singleton tampered with an existing document is denied.

### C.   Adequate "Nexus" to an Official Proceeding

Singleton also challenges Count Ten on the grounds that he is alleged to have made the false statements to private attorneys hired by his employer, El Paso, not to federal officials or agents and not in an interview initiated by subpoena. Singleton relies heavily on *United States v. Aguilar*, 515 U.S. 593 (1995), and its progeny. *Aguilar* involved the prosecution of a federal judge for violating the omnibus clause of 18 U.S.C. § 1503. The *Aguilar* court held that the evidence failed to establish an adequate connection between the defendant's conduct and the "due administration of justice" even though the defendant allegedly knew that there was an ongoing grand jury

inquiry and falsely denied wrongdoing in an interview with FBI agents. *Aguilar*, 515 U.S. at 601. The Supreme Court stated that the § 1503 omnibus clause required a "nexus" between the defendant's alleged obstructive act and the obstructed proceeding. *Id.* at 600. The Court stated that § 1503 prohibits a "defendant [from] act[ing] with an intent to obstruct justice, and in a manner that is likely to obstruct justice." *Id.* at 601. This "nexus" requirement obligates the Government to show that the alleged obstruction of justice has "a relationship in time, causation, or logic with the judicial proceedings." *Id.* at 599-600. Focusing on the defendant's knowledge and intent, "if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct." *Id.* at 599. *Aguilar* has been interpreted to mean that there must be proof the defendant's actions demonstrate his intent to do something that has the "natural and probable effect" of interfering with the due administration of justice, *i.e*, obstructing justice. *Id.*; *United States v. Muhammad*, 120 F.3d 688, 695 (7th Cir. 1997).

The *Aguilar* Court held that the proof at trial did not establish that the defendant judge anticipated his conduct would have an effect on the grand jury because the defendant made the false statements "to an investigating agent . . . who might or might not testify before a grand jury." *Id.* at 600. The Court held the evidence insufficient because the Government had not shown that the agents "acted as an arm of the grand

jury," that "the grand jury had even summoned the testimony of these particular agents," or that the defendant "knew" that his false statement would be provided to the grand jury." *Id*. at 600-01.

*Aguilar* does not support dismissal of Count Ten. For pretrial purposes, Count Ten contains allegations sufficient to provide the necessary factual nexus to an "official proceeding" under §1512(c)(2). The Indictment, when construed liberally and accepted as true, alleges facts indicating that the outside attorneys were acting as an arm of the investigating agencies, that the investigating agencies had formally requested information from El Paso, and that Singleton believed that his statements to the outside attorneys would be provided to the investigating federal agencies. The Indictment alleges that Singleton supplied a written response to at least one federal agency's inquiry; that he met (accompanied by his criminal defense attorney) with El Paso's outside attorneys whom he knew were performing a detailed investigation in response to the governmental inquiries; and that he "believed that El Paso's Outside Lawyers would inform government agencies of his statements [made] during the interview," and that, in fact, the outside attorneys did so through a memorandum of the interview. Indictment, at 20, ¶ 14. These allegations – in combination – are adequate to satisfy the requirement for an official proceeding, of which Singleton was aware. The allegations, if proved beyond a reasonable doubt, could raise the inference that

Singleton expected and thus arguably ***intended*** that his intentionally false statements would be supplied to the Federal government in connection with one or more of these identified official proceedings. Thus, the Court concludes that the allegations in Count Ten, when construed as described here, are sufficient to provide the nexus to an official proceeding. Defendant's pretrial motion to dismiss Count Ten for failure to allege an adequate nexus to an official proceeding is denied.

### D. "As Applied" Vagueness Challenge

Singleton asserts that there is nothing inherently "corrupt" or wrongful about a person seeking to influence future government fact-finding, and that a "failure to disclose information is not ordinarily deemed criminal absent the prosecution's establishing an affirmative obligation to make the disclosure." *See* Motion, p. 28 (citing *Chiarella v. United States*, 445 U.S. 222, 228 (1980)). In Count Ten, however, the Government alleges that Singleton did significantly more than merely deny misconduct.

Citing *Aguilar*, Singleton also contends that the language of § 1512(c)(2) is unconstitutionally vague as applied to him with reference to the statements he made during the meeting with the El Paso outside attorneys. The United States Supreme Court has explained that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."

*United States v. Powell*, 423 U.S. 87, 92 (1975) (citation omitted); *see also United States v. Howard*, 569 F.2d 1331, 1337 n.9 (5th Cir. 1978). As the Court held in Powell, "[w]hile doubts as to the applicability of the language in marginal fact situations may be conceived, . . . the statute [gives] adequate warning." 423 U.S. at 93. Section 1512(c)(2), as construed by this Court, gives Singleton adequate warning that his alleged false statements to the company's outside counsel under all the circumstances alleged in the Indictment constituted a criminal offense. Like § 1503's residual clause discussed in *Howard*, the statute at bar "quite clearly proclaims that all obstructions of justice are prohibited," and § 1512(c)(2) "gives 'fair notice of the offending conduct' in this case, which is all the constitution requires." *See Howard*, 569 F.2d at 1336-37 (citations omitted). The balance of Singleton's arguments are addressed by the Court's construction of § 1512(c)(2), and no further discussion is required. Singleton's argument regarding vagueness is rejected.

### III. CONCLUSION AND ORDER

For the reasons explained above, Defendant Greg Singleton's Motion to Dismiss Count Ten of the Second Superseding Indictment [Doc. # 12] is **DENIED**. The ruling on the pretrial motion should in no way be interpreted as the Court's ruling or comment on the weight or sufficiency of the evidence supporting the allegations in the Indictment.

SIGNED at Houston, Texas, this **14th** day of **July, 2006.**

_____
Nancy F. Atlas
United States District Judge